**UNITED STATES of America,**
**Plaintiff,**

v.

**Kirk E. McFADDEN and Tony**
**Nenninger, Defendant.**

**Criminal Action Nos. 98–03046–**
**01CR, 98–03047–01CR.**

United States District Court,
W.D. Missouri,
Southern Division.

Aug. 4, 1999.

Thomas M. Larson, U.S. Attorney's Office, Kansas, MO, for U.S.

Federal Public Defender, Federal Public Defender's Office, Springield, MO, for Defendant.

## *ORDER*

ENGLAND, United States Magistrate Judge.

Pending before the Court is defendants' supplemental motion to dismiss the two-count information against them.

Defendants assert that the regulations governing noncommercial assembly of 75 or more persons in the National Forest are facially unconstitutional because they allow the issuing officer unbridled discretion in imposing terms and conditions on the permit holder. Defendants specifically contend that: 1) the regulations under which they are charged are not a valid time, place and manner restriction because they allow Forest Service officers unfettered discretion to impose terms and conditions regarding minimizing damage and protecting the public interest, which constitute a prior restraint on their freedom of expression; 2) the regulations allow the officers unlimited discretion to determine the duration of the event; 3) the regulations allow unfettered discretion to revoke or suspend a permit without granting prompt judicial review and do not allow prompt review to challenge arbitrary terms and conditions; and 4) the requirement that the holder of the fee indemnify the United States for any damages is more than a nominal fee and therefore, violates the First Amendment guarantee of freedom of expression.

The specific regulations at issue, 36 C.F.R. § 251.56, *Terms and Conditions*, provide that:

(a) Each special use authorization shall contain: (1) Terms and conditions which will * * * (ii) minimize damage to scenic and aesthetic values and fish and wildlife habitat and otherwise protect the environment. (b) Duration and Renewability-(1). Requirements. If appropriate, each special use authorization will specify its duration and renewability. The duration shall be no longer than the authorized officer determines to be necessary to accomplish the purpose of the authorization and to be reasonable in

light of all circumstances concerning the use.

Defendants contend that these provisions allow a government agent to allow his or her personal views to affect the terms and conditions of the authorization regarding what might be in the public interest, what might be "scenic and aesthetic," what might be the appropriate duration of an event, and whether to revoke any group use authorization based on his or her personal view about the message conveyed by the group. It is their contention that such schemes of prior restraint are presumed to be constitutionally invalid and that the regulations, which allow for arbitrary application, are inconsistent with a valid time, place and manner regulation.

Defendants also challenge the portion of the regulatory scheme that governs suspension or revocation of a group use permit. Specifically in regard to the time limits on granting or denying the authorization, defendants contend that these are illusory because the officers can suspend or revoke the authorization at any time for any reason that would have justified its denial at the outset. They also assert that provisions purporting to grant judicial review are illusory, as a practical matter, because there can be no review when the event is already ongoing, and there is no provision for prompt judicial review to contest a term or condition attached to the special use authorization.

It is also contended that the regulatory scheme is unconstitutional in that it requires an applicant to agree to pay the United States for any damages that may result from the event, which creates the untenable situation in which an individual must agree to pay for the right to assemble. Specifically in regard to the Rainbow Family gatherings, defendants allege that the regulations are unacceptable because the group is composed of citizens who are loosely affiliated, and who cannot reasonably be expected to assume complete financial responsibility for whoever might show up. Because the fee could be more than nominal, defendants assert that the provision is unconstitutional.

The government contends, at the outset, that applicable law does not allow defendants to bring a facial challenge to portions of the regulatory scheme that have never been applied to them. They assert that defendants cannot allege that any of the dangers of which they complain have ever occurred because they have never had any issued permit. It is the government's contention that facial challenges are generally disfavored, and that the issues raised in this case, i.e., unfettered discretion in imposing terms and conditions, payment for causing damage, revocation and suspension issues, and judicial review provisions only become relevant after the Forest Service has issued a permit.

■ Regarding a facial challenge, although there is support in *Ward v. Rock Against Racism,* 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), for the proposition that defendants' facial challenge should be barred outright, there is also support for allowing a party to bring a facial challenge in cases where a regulation is challenged on the basis of unbridled discretion of the decision-maker. *FW/ PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223–25, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Based on defendants' allegations, this Court finds that it is in the interests of justice to address the merits of defendants' claims that the provisions at issue are an unconstitutional prior restraint because they fail to properly limit the decision maker's discretion.

The Court notes, initially, that many of the arguments advanced by defendants have been rejected in other districts. *See United States v. Johnson,* 159 F.3d 892, 896 (4th Cir.1998) (upholding the regulatory scheme at issue as narrowly tailored to serve goals of Forest Service in protecting resources, allocating space, and addressing public health and safety concerns); *Black v. Arthur,* 18 F.Supp.2d 1127 (D.Or.1998), *appeal pending,* No. 98–3604 (9th Cir.) (rejects many of the arguments advanced

by defendants in this case, finding that the regulations do not impose a prior restraint); *United States v. Masel,* 54 F.Supp.2d 903, 914 (W.D.Wis.) (rejecting facial challenge to terms and conditions of the regulations).

 The law is clear that a permit-granting provision is constitutionally valid if it is narrowly drawn, with reasonable and objective criteria for granting it, and with adequate procedural safeguards. *FW/PBS,* 493 U.S. at 226–28, 110 S.Ct. 596.[1] Therefore, even regulations that restrict expressive conduct are constitutionally permissible, with the proper substantive and procedural safeguards. *Ward,* 491 U.S. at 794, 109 S.Ct. 2746; *United States v. Kistner,* 68 F.3d 218, 221 (8th Cir.1995) (finding language imposing terms and conditions necessary "to preserve peace and tranquility" and "to prevent dangers to public health and safety" constitutionally valid).

 In this case, the Court agrees with the government that the language regarding "danger to scenic and aesthetic values" is not unconstitutionally vague in the context of the National Forest System, regardless of defendants' wholly speculative contentions to the contrary. There is no question that the government has a substantial interest in maintaining national forests in an attractive condition for the use and enjoyment of all visitors. *Id.* The regulation in question lists content neutral terms and conditions that may be imposed on an issued permit, reflecting concerns for the aesthetic aspects of the national forest, rather than any restriction on the content of expressive activity. Accordingly, the Court finds that the terms and conditions provision does not confer unbridled discretion in the hands of government officials.

The phrase "otherwise protect the public interest" also passes constitutional muster, particularly because the Forest Service has specifically identified the "public inter-

ests" it seeks to protect, i.e., forest resources and facilities, safety and health of forest users, and space among competing uses. *See Final Rule,* 60 Fed.Reg. 45,258, 45,262 (1995); *Johnson,* 159 F.3d at 895; *Black,* 18 F.Supp.2d at 1133–34. Therefore, defendants' argument must fail, given that terms and conditions may only be imposed to protect one of the delineated interests. Specifically, "terms and conditions that the Forest Service may impose in a permit are limited to those designed to assure compliance with otherwise applicable health and safety standards; to minimize damage to water quality, fish, wildlife, and other environmental aspects of the forests; and to protect the physical safety of all those in the National Forest System." *Id.* at 1134; 36 C.F.R. § 251.56(a). The Court finds that the regulations contain sufficient limitations on the permitting officer's discretion to pass constitutional scrutiny. *Black,* 18 F.Supp.2d at 1134.

It should be noted, moreover, that defendants have not alleged that the Forest Service's administration of the noncommercial group use regulation at issue has been unfair or discriminatory. Based on a reasonable interpretation of the challenged regulations, and given that there are clearly delineated purposes underpinning these regulations, which serve to guide and govern the discretion of the administering officials, the Court finds that defendants' facial challenge to the terms and conditions provisions must fail. Regardless of defendants' efforts to describe the terms and conditions provisions attached to a special use permit as potentially onerous and oppressive, the Court is satisfied that the regulations do not constitute a prior restraint, but rather, limit the permitting official's discretion in an objective, constitutionally sound manner.

Defendants also challenge the regulations regarding revocation and suspension

---

1. This Court has previously held that the Forest Service's noncommercial group use regulation passed constitutional muster under the intermediate scrutiny test. Order at 4–5, dated September 29, 1998.

of a permit. 36 C.F.R. § 251.60(a)(1)(i)(A). They assert that the Forest Service could hypothetically issue a permit and then revoke it shortly before or doing the event.

■ Having fully reviewed the applicable regulations, the Court finds that there are reasonable limitations on duration and revocation or suspension of the permit. The regulations specify that a permit must be "no longer than the authorized officer determines to be necessary to accomplish the purpose of the authorization and to be reasonable in light of all of the circumstances." 36 C.F.R. § 251.56(b)(1). The following are the delineated, relevant criteria for determining the length of the permitted use: "(i) resource management direction contained in land management and other plans; (ii) public benefits provided; (iii) cost and life expectancy of the authorized facilities; (iv) financial arrangements for the project; and (v) the life expectancy of associated facilities, licenses, etc." *Id.* These limitations include concerns for resource management and preservation of the facilities and area to be used. Clearly, the provisions contain specific factors that the permitting officer must consider in determining the reasonableness of the duration of a permit, as well as whether to revoke or suspend it. *Black,* 18 F.Supp.2d at 1134. Because these considerations are content neutral, contain such criteria as a 48-hour deadline for the permitting decision and the requirement that the officers act affirmatively upon applications once received, and given that prompt judicial review is available, the Court finds that defendants' facial challenge on these grounds must fail. Regardless of their arguments to the contrary, there is no reason to presume that the Forest Service will not comply with its own regulations. Therefore, it is clear that the regulations regarding granting, revoking, and suspending a permit protect legitimate, content-neutral public interests and do not violate the Constitution.

■ Defendants also contend that the Forest Service bears the burden of going to court to seek an injunction against any unpermitted use. As stated by the government, this argument, addressed in *Black,* was rejected as "entirely misplaced," because of the content-neutral aspect of the regulation. 18 F.Supp.2d at 1134–35. There is no reason that the burden should be placed on the Forest Service to seek judicial review. It is clear that a permitting entity need not go to court in such circumstances. *FW/PBS,* 493 U.S. at 229–30, 110 S.Ct. 596. Where the permitting official's decision is not based on an evaluation of the content of an applicant's speech, but rather, is confined to a list of content neutral requirements, it is proper for the applicant, and not the Forest Service, to seek judicial review. *Black,* 18 F.Supp.2d at 1134–35.

It is also argued that the regulations at issue do not provide for prompt judicial review of terms and conditions that the Forest Service imposes in a permit, and that the administrative remedy process is too lengthy. It is the government's position that the administrative appeals process is available to only a limited class, which does not include defendants. Rather, the government states that only individuals who are responding to a formal solicitation from the Forest Service may invoke the administrative remedies, pursuant to 36 C.F.R. § 251.80–251.102.

■ Having reviewed the applicable provisions, the Court finds that the government is correct regarding the administrative remedy procedure. However, given that applicants for noncommercial group use may go directly to court to challenge any terms or conditions imposed by the Forest Service, defendants' contentions are without merit. Although defendants complain that the judicial review provisions are illusory because undesired action may occur while they are "deep in the forest," there is nothing in the law to suggest that judicial review must be immediately available on the spot to any aggrieved citizen. The Court finds that the judicial review provisions are constitutionally adequate.

Regarding the challenge to the Forest Service's ability to require users to pay for damages, the Court finds this argument to be without merit. Clearly, as the government maintains, there is no constitutional right to destroy or damage public property, regardless of whether the conduct at issue is protected speech. While defendants claim that the First Amendment compels the taxpayers to bear the cost of damage to the forest that might be caused by the Rainbow Family, the Court finds that it is not constitutionally prohibited for a permit holder to be held responsible for damage caused in the area for which the permit was obtained. While defendants speculate that damage could conceivably be caused by others on the land where the Rainbow Family was permitted to gather, and that it would be unjust to hold the Rainbow Family liable where a group must allow access to non-group users, the Court is of the opinion that the standard liability provision in the permit should not be deemed unconstitutional on the basis of sheer speculation.

Because the Court finds that the challenged regulations do not allow for unbridled discretion on the part of Forest Service officials, defendants' supplemental motion to dismiss must be denied.

For the foregoing reasons, it is hereby

ORDERED that defendants' supplemental motion to dismiss be, and it is hereby, denied.